UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| In re | Case No. 11-02475 |
|---|---|
| APRIL KANOHOKULA and KEOKI KANOHOKULA, | Chapter 7 |
| Debtor. | Re: Docket No. 25 |

# MEMORANDUM OF DECISION ON
# MOTION FOR SANCTIONS FOR AUTOMATIC STAY VIOLATIONS

The question in this chapter 7 case is whether a condominium association violated the automatic stay or the discharge injunction by attempting to collect a special assessment from the debtors. I conclude that the association's claim was not discharged, so there was no violation of the discharge injunction, and that the association wilfully violated the automatic stay but inflicted only limited harm on the debtors.

## FACTS

Mr. and Mrs. Kanohokula own a condominium apartment in the Cathedral Point - Melemanu Woodlands project in Mililani. The Association of Apartment Owners of Cathedral Point - Melemanu Woodlands (the "Association") owns and controls the common elements of the project and has the power to impose

assessments on the condominium owners to cover its expenses.

In 2007 or 2008, the Association discovered that water intrusion had compromised the structural integrity of the project's parking structure. The Association spent $343,147.00 in 2009 to correct the problem. In order to replenish its reserve fund, the Association's board voted to impose a special assessment on each apartment owner.

The Association sent a letter, dated August 7, 2011, to Mr. and Mrs. Kanohokula. The Kanohokulas received this letter on or around August 9, 2011. (Shortly thereafter, the Kanohokulas received another letter that was identical to the first letter except the assessment amount was corrected.) The letter explained the circumstances that led to the special assessment and informed them that the assessment for their unit was $1,779.22. The letter required the Kanohokulas to choose among three options for payment of the assessment. First, they could pay the entire amount in a lump sum. Second, they could pay the assessments with a ten percent service charge in twelve monthly installments. Third, they could pay the assessments with a twelve percent service charge in twenty-four monthly installments. In any case, the first payment (or the lump sum payment) was due on October 1, 2011. The letter stated that any apartment owner who did not elect a payment method by September 15, 2011, would be assigned to the twelve month

2

payment plan. The Kanohokulas apparently did not respond.

On September 16, 2011, Mr. and Mrs. Kanohokula filed their chapter 7 petition. They listed the Association as an unsecured creditor for the amount of the special assessment and the court gave the Association notice of the filing. They have consistently paid their regular assessments but have not paid the special assessment.

The billing statements that the Association sent to the Kanohokulas included the monthly installments of the special assessment. By letter dated November 17, 2011, the Kanohokulas informed the Association that the billings violated the automatic stay and demanded that the Association cease all attempts to collect the special assessment. The Association did not respond for almost a year.

On December 13, 2011, the Kanohokulas received their discharge.

On September 19, 2012, the Association's counsel finally responded to the Kanohokulas, claiming that the special assessment was not discharged. The Kanohokulas promptly reopened their bankruptcy case to file this motion.

## ANALYSIS

*The Association's Secured Claims are Not Discharged*

The Kanohokulas argue that, by attempting to collect the special

3

assessment, the Association violated the discharge injunction.  But the discharge only affects the debtor's "personal liability." 11 U.S.C. § 524(a)(1), (2) (2006). With limited exceptions, none of which applies here, "liens and other secured interests survive bankruptcy." Farrey v. Sanderfoot, 500 U.S. 291, 297 (1991); see also Isom v. United States (In re Isom), 901 F.2d 744, 745 (9th Cir. 1990).

The Association's claims against the Kanohokulas are secured by an automatic statutory lien.  "All sums assessed by the association but unpaid for the share of the common expenses chargeable to any unit shall constitute a lien on the unit . . . ." Haw. Rev. Stat. § 514B-146(a) (2012).  Regardless of whether the Association's claim was discharged, it is still entitled to enforce its lien rights against the Kanohokulas' condominium unit, and its collection efforts directed at lien enforcement did not violate the discharge injunction.

*The Association's Special Assessment Claim is Not Discharged*

The Association's post-discharge communications with the Kanohokulas arguably were not limited to lien enforcement.  Therefore, I must examine whether the discharge injunction precludes the Association from demanding payment from the Kanohokulas.

Condominium associations enjoy a special exemption from the usual rule that the bankruptcy discharge eliminates debts that arose before the date of the

4

petition. 11 U.S.C. § 523(a)(16) provides that the chapter 7 discharge does not apply to a debt:

> For a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership, in a share of a cooperative corporation, or a lot in a homeowners association, for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit, such corporation, or such lot, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case.

Congress enacted the original version of section 523(a)(16) in 1994 to address a split in the case law on whether postpetition condominium fees and assessments were dischargeable prepetition obligations. Some courts had held that all such fees and assessments were prepetition debts because they arose out of a prepetition contract with the condominium association, made when the debtor acquired ownership of the property. See, e.g., In re Barr, 457 B.R. 733, 737 (Bankr. N.D. Ill. 2011). The section was intended to "preempt" this argument. In re Ames, 447 V.R. 680, 682 n.3 (Bankr. D. Mass. 2011). There was legislative concern that debtors who continued to own and benefit from their units postpetition were burdening other homeowners with their unpaid assessments. Barr, 457 B.R. at 737. The sponsors of the bill intended that a debt not be dischargeable if the

5

debtor enjoyed the property postpetition.  Old Bridge Estates Cmty. Ass'n Inc. v. Lozada (In re Lozada), 214 B.R. 558, 562 (Bankr. E.D. Va. 1997).

Congress amended section 523(a)(16) in 2005 so that it would apply to cooperative apartments and homeowners associations, not just condominium projects.  The 2005 amendments do not affect this case.

The Association relies on the body of section 523(a)(16), which speaks of the date on which an assessment "becomes due and payable."  The Association points out that the special assessment (or the first installment thereof) was due and payable on October 1, 2011, after the Kanohokulas filed their bankruptcy petition.

The Kanohokulas rely on the proviso to the section, which preserves the discharge of a fee or assessment "for a period arising before" the bankruptcy.  They emphasize that the Association incurred the expenses and announced the special assessment before their bankruptcy.

Only two reported decisions resemble the facts of this case.

In Barr, the debtors lived in a condominium which was damaged in a flood on July 24, 2010.  Two days later, on July 26, 2010, the debtors filed a chapter 7 petition.  On September 28, 2010, the board imposed a special assessment to cover the cost of repairing the flood damage.  The debtors received their discharge on October 19, 2010.  They debtors continued to reside on the property throughout

6

the bankruptcy process. A dispute arose about whether the special assessment was discharged. The court noted that the special assessment became due and payable after the debtors filed their bankruptcy petition and that it was therefore not discharged. In reliance on the proviso, the debtors argued that the claim was for a "period arising before" the petition because the flood damage which gave rise to the special assessment occurred prepetition. The court rejected this contention because, under the first part of the section, "the time of the conduct which gave rise to the debt" is not relevant. Id. at 737. The court said that "[t]he more likely meaning of the term 'period' is the assessment period, referring to the time the assessment was made," and noted that the assessment was made just after the petition date.

In In re Kelson, 2012 Bankr. LEXIS 4200 (Bankr. S.D. Fla. Sept. 10, 2012), the debtor owned a condominium unit. On May 17, 2012, the board adopted a special assessment. On May 18, 2012, the board notified unit owners of the special assessment and told them that owners could pay in full without interest on June 15, 2012, or make monthly payments with interest beginning July 1, 2012. Also on May 18, the debtor filed a chapter 13 petition. The question presented was whether the special assessment was a prepetition debt that arose when the assessment was made, and therefore that the chapter 13 plan had to address, or

7

rather was a postpetition debt that was also nondischargeable under section 523(a)(16). The court held that the special assessment was a prepetition debt. The court did not rule on the application of section 523(a)(16).

The mismatch between the body and the proviso makes interpretation difficult. Both require a temporal determination, but each uses a different event (the date on which the assessment is due and payable, versus the "period arising") to mark the determinative time.

The legislative history helps resolve the ambiguity.

> This section amends section 523(a) of the Bankruptcy Code to except from discharge those fees that become due to condominiums, cooperatives, or similar membership associations after the filing of a petition, but only to the extent that the fee is payable for time during which the debtor either lived in or received rent for the condominium or cooperative unit. Except to the extent that the debt is nondischargeable under this section, obligations to pay such fees would be dischargeable.

140 Cong. Rec. H 10-764, 10770 (October 4, 1994). In other words, the proviso states the obvious: condominium assessments are dischargeable unless the body of section 523(a)(16) says they are not.

Applying the plain language of the body of section 523(a)(16), the special assessment was not due and payable until after the Kanohokulas filed their bankruptcy case. It is not relevant that the board announced the assessment before

8

the bankruptcy, or that the assessment was meant to cover expenses that the Association occurred previously.

*The Association Violated the Automatic Stay*

Even though the Association's claims against the Kanohokulas are secured and nondischargeable, the automatic stay of section 362 still applied. That section applies with equal force to dischargeable and nondischargeable claims.

The Association's bankruptcy counsel conceded that the automatic stay applied, that the Association violated it by demanding payment of the special assessment, and that its violation was willful because the Association acted intentionally and was notified of the bankruptcy filing. Ozenne v. Bendon (In re Ozenne), 337 B.R. 214, 220 (B.A.P. 9th Cir. 2006) (citing In re Peralta, 317 B.R. 381, 389 (B.A.P. 9th Cir. 2004)).

There is no evidence that the Association's violations caused the Kanohokulas to suffer any out-of-pocket loss or compensable emotional distress. In her declaration, Mrs. Kanohokula testified that, in November 2011, she and her husband made a written demand that the Association cease its efforts to collect the special assessment and that "[h]aving to send this letter caused us great inconvenience and embarrassment." This is not a sufficient basis for an award of emotional distress damages, however. Dawson v. Washington Mut. Bank, F.A. (In

9

re Dawson), 390 F.3d 1139, 1149 (9th Cir. 2004) (to recover emotional distress damages for an automatic stay violation, a debtor must (1) demonstrate that she suffered significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay). Her declaration also speaks of the effort, inconvenience, and worry she incurred after she received a demand from the Association in September 2012. By that time, however, the automatic stay had terminated and been replaced by the discharge injunction and, as I have just ruled, the discharge injunction does not apply to the Association's claims.

The appropriate remedy for the Association's violations is to deny the Association any late fees, attorneys' fees, and costs pertaining to the special assessment prior to the entry of this order, and to give the Kanohokulas another chance to elect one of the payment options afforded by the Association to all unit owners. The automatic stay precluded the Association from requiring the Kanohokulas to make payments until after the discharge was entered. It took about a year for the Association to even respond to the debtors' demands. If the Association had responded promptly, the debtors could have addressed this issue without incurring late fees or the Association's attorneys fees. Eliminating those charges and giving the debtors another chance to make the payment election

10

returns the debtors to the status quo as it existed before the Association violated the stay.

## CONCLUSION

The Association's special assessment claim was not due and payable until after the Kanohokulas filed their bankruptcy petition. The claim, therefore, was excepted from discharge under 11 U.S.C. § 523(a)(16). As a result, the Association did not violate the discharge injunction. The Association did, however, violate the automatic stay. The Association is denied any late fees, attorneys' fees and costs pertaining to the special assessment prior to entry of this order. The Kanohokulas are entitled to another opportunity to elect one of the payment options offered by the Association to all unit owners. Counsel for the debtors shall submit an appropriate order, with approval as to form by the Association's counsel.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 04/02/2013